IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Alfonso Vasquez-Palafox, | Case No. 3:12 CV 2380 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| United States of America, | |
| Defendant. | |

**INTRODUCTION**

Plaintiff Alfonso Vasquez-Palafox filed this action alleging various tort claims against Defendant United States under the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.*, for the illegal detention and assault allegedly suffered at the hands of Border Patrol agents at the United States Border Patrol Station in Sandusky, Ohio (Doc. 1). This case is related to a civil rights suit brought as a class action in this Court and dismissed in November 2012, in which Plaintiff was a named plaintiff. *See Muniz-Muniz v. U.S. Border Patrol*, No. 3:09 CV 2865, 2012 WL 5197250 (N.D. Ohio 2012). The parties stipulated that the deposition of Plaintiff in *Muniz* may be used in this action.

Defendant moved for Summary Judgment (Doc. 18), and Plaintiff opposes (Doc. 24). Defendant also filed Notice of Objections (Doc. 25), asking this Court to strike certain documents filed with Plaintiff's opposition. For the reasons stated below, Defendant's Motion for Summary Judgment is granted in full, and the Notice of Objections is denied as moot.

## BACKGROUND

Plaintiff is a Hispanic male resident of Fremont, Ohio (Doc. 1; *see also* Doc. 24-1, Palafox Dep. at 37–39).  On November 3, 2009, Plaintiff was walking with his son down a residential street in Fremont (Palafox Dep. at 13–15).  He did not see other people on the street at the time (*id.* at 15, 31–32).  A Border Patrol vehicle passed Plaintiff, which was not unusual as he was accustomed to seeing Border Patrol agents on a daily basis (*id.* at 12, 16, 27).  As Plaintiff walked toward his home, the vehicle turned around and approached him (*id.* at 16–17).  A Hispanic-looking agent sitting on the passenger side, closer to Plaintiff, asked him for directions, while the white driver of the car "didn't even talk" to him (*id.* at 17–19).  The agents were later identified as Matthew Richardson (the driver) and Ramiro Corona, Jr. (the passenger) (Doc. 18-1, Corona Decl. at ¶ 5; Doc. 18-2, Richardson Decl. at ¶ 4).

After Plaintiff told Agent Corona he did not know the location of the address for which the agents were looking, more questions followed in both English and Spanish (Palafox Dep. at 18, 21–23).  Plaintiff testified that when he started speaking Spanish, "that's when they just came right at [him] . . . asking and asking more questions" (*id.* at 34).  Agent Corona asked Plaintiff whether he used any drugs and whether he knew anyone selling drugs (*id.* at 21–22).  Plaintiff responded to both questions in the negative, but mentioned that he had known of someone who sold drugs to his former mother-in-law in the past (*id.* at 21, 26).  Agent Corona did not follow up on that information, instead inquiring about Plaintiff's residence and employment (*id.* at 24, 30–31).  Agent Corona also asked whether Plaintiff knew other Hispanics who worked in the fields, and to what states those workers had gone (*id.* at 21–22, 24).

2

Plaintiff testified Agent Corona asked him for his contact information and whether he and Agent Richardson could have "business" with him (*id.* at 22–23). Plaintiff thought that by "business," the agent meant "turning other people in," and he felt he had no option but to give the agent his telephone number and address, but he did not "negotiate[] anything" about the "business" (*id.* at 23). Plaintiff testified the agents told him not to change his telephone number or move because he could be needed for more information (*id.* at 32–33).

The agents never accused Plaintiff of a crime or asked about his immigration status (*id.* at 25, 30). Nevertheless, Plaintiff offered his immigration documents for review two or three times, but the agents refused to accept them and repeatedly assured Plaintiff that they were just interested in doing "business" with him (*id.* at 25–26). Plaintiff explained that he was scared and "figured [he] better answer before they start asking" (*id.* at 25).

During the entire encounter, the agents remained in the vehicle (*id.* at 24). One of the agents had his hand on his weapon, although he did not threaten Plaintiff with it (*id.* at 28–29). Plaintiff testified that he felt uncomfortable throughout the conversation and felt like he could not leave because "there was one question after the other," and Agent Corona's tone of voice was "very intimidating" (*id.* at 24, 29). Plaintiff's son was crying and tried to pull him away, but Agent Corona said, "wait, wait, you know, let's talk a little bit more," and Plaintiff did not feel he had the right to say no (*id.* at 24, 29–30). Plaintiff testified he tried to leave "a little bit" from the moment he saw the agents but he never told them he wanted to go (*id.* at 29–30).

Plaintiff testified he felt "held back," and he felt he could not leave because he was afraid of the agents' reaction to him doing so (*id.* at 30). In spite of being scared and uncomfortable, however, Plaintiff asked the agents whether he could take a photograph of his son in the patrol car (*id.* at 31,

3

35). The agents refused, stating they were too busy (*id.* at 31). Plaintiff testified he did not know how long the questioning lasted, but said he thought it was about thirty minutes (*id.* at 24).

During the conversation, Plaintiff noticed a white woman exit a nearby house to observe the situation (*id.* at 19–21). Plaintiff testified that the agents did not ask the woman for directions, but once they saw the her, "they seemed to be in more of a hurry to leave" (*id.* at 20, 36).

Plaintiff believed he was targeted for this encounter due to his Hispanic ethnicity: skin color, hair, walking style, and because he "didn't know how to respond to them in English" (*id.* at 31, 33–34). Even though Plaintiff had only one encounter with the Border Patrol agents, he thinks something attracts the agents to him so he prefers to "avoid notice" by actively avoiding any Border Patrol agents and only coming out at night (*id.* at 27–28).

### SUMMARY JUDGMENT STANDARD

Pursuant to Federal Civil Rule 56(a), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." This burden "may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When considering a motion for summary judgment, the district court must draw all inferences from the record in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

**DISCUSSION**

In its Motion, Defendant argues that Plaintiff's five tort claims fail on the merits, noting that Plaintiff's own deposition testimony defeats his claims (Doc. 18 at 6–14). In the alternative, Defendant asserts it is entitled to immunity under Ohio Revised Code § 2744.03(A)(6). Because this Court grants in full Defendant's Motion on the merits, it declines to address the immunity argument.

**Claim One: Assault**

Under Ohio law, assault is a willful threat or attempt to harm or touch another offensively that results in reasonably placing the other in fear of such contact. *Kaylor v. Rankin*, 356 F. Supp. 2d 839, 853 (N.D. Ohio 2005) (citing *Smith v. John Deere Co.*, 83 Ohio App. 3d 398, 406 (1993)). A contact is offensive when it offends "a reasonable sense of personal dignity." *Love v. City of Port Clinton*, 37 Ohio St. 3d 98, 99 (1988). In addition, the offensive harm or touch must be expected to occur immediately. *Kaylor*, 356 F. Supp. 2d at 853 (citing *Matlock v. Ohio Dept. of Liquor Control*, 77 Ohio Misc. 2d 13 (Ohio Ct. Cl. 1996)).

The record, viewed in the light most favorable to Plaintiff, lacks evidence of contact or a threat of contact. While Plaintiff testified he found the tone and behavior of the agents intimidating, their behavior cannot be reasonably construed as an assault under Ohio law. The agents avoided any physical contact by staying in their vehicle throughout the encounter, refused to take Plaintiff's immigration documents, and denied his request for a photograph. Likewise, there is no record evidence that the agents threatened Plaintiff with a "touch or harm," or that Plaintiff felt threatened with physical harm. Indeed, Plaintiff's request for the photograph contradicts a contention he was in fear of an immediate offensive contact.

**Claim Two: False Imprisonment**

The tort of false imprisonment concerns "purely a matter between private persons for a private end," as opposed to a false arrest, which is an unlawful detention "by reason of an asserted legal authority to enforce the process of law." *Rogers v. Barbera*, 170 Ohio St. 241, 243 (1960). False imprisonment requires proof of: (1) an intentional detention; (2) the detention took place in a limited area; (3) the detention took place for any appreciable time, "however short"; (4) the absence of a lawful privilege; and (5) the lack of the detainee's consent. *Kaylor*, 356 F. Supp. 2d at 854–55 (N.D. Ohio 2005) (citing *Feliciano v. Kreiger*, 50 Ohio St. 2d 69, 71 (1977) and *Thacker v. City of Columbus*, 328 F.3d 244, 261 (6th Cir. 2003)). Malice, motive, or lack of probable cause are not elements of a false imprisonment claim. *Thacker*, 328 F.3d at 261 (citing *Tucker v. Kroger Co.*, 133 Ohio App. 3d 140, 146 (1999)).

Plaintiff's false imprisonment claim fails because it was asserted against the Border Patrol agents for actions taken in the course of their law enforcement duties. *See Burr v. Burns*, 439 F. Supp. 2d 779, 790 (S.D. Ohio 2006) (granting summary judgment on the false imprisonment claim asserted against police officers); *United States v. Perkins*, 177 F. Supp. 2d 570, 580 n.7 (W.D. Tex. 2001) (recognizing the limited law enforcement authority of border patrol agents).

Construing Plaintiff's false imprisonment claim as a claim for false arrest, Plaintiff has also failed to put forward sufficient evidence to maintain a false arrest claim. "There is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets." *Terry v. Ohio*, 392 U.S. 1, 34 (1968); *see also United States v. Mendenhall*, 446 U.S. 544, 553 (1980) ("The purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry.").

6

Plaintiff has not identified a restriction on his ability to "disregard the questions and walk away"; therefore, "there has been no intrusion upon [his] personal liberty or privacy." *Mendenhall*, 446 U.S. at 554. Plaintiff was not detained; instead, he voluntarily stopped and responded to lawful questioning by the agents on a public residential street, not a limited area. The agents remained in the car and did not attempt to physically restrain Plaintiff. Even though they asked him to wait and "talk a little bit more," they never told Plaintiff he was not allowed to leave. Plaintiff never informed the agents he wanted to stop the questioning and walk away. Although he felt "held back" due to Agent Corona's intimidating tone and Agent Richardson's hand on his weapon, he continued the conversation and asked to take a photograph of his son in the agents' patrol car.

Plaintiff's own deposition testimony undermines a claim of false imprisonment or false arrest by the Border Patrol agents. His assertions of the agents' malicious purpose, bad faith, wanton manner, and recklessness have no legal effect on the analysis of these claims. *See Thacker*, 328 F.3d at 261.

**Claims Three and Four: Intentional and Negligent Infliction of Emotional Distress**

Plaintiff's claims for intentional and negligent infliction of emotional distress fail. Plaintiff has not provided evidence of injury for either claim.

A plaintiff in an action for intentional infliction of emotional distress must establish the following:

> (1) the defendant intended to cause, or knew or should have known that his actions would result in serious emotional distress; (2) the defendant's conduct was so extreme and outrageous that it went beyond all possible bounds of decency and can be considered completely intolerable in a civilized community; (3) the defendant's actions proximately caused psychological injury to the plaintiff; and (4) the plaintiff suffered serious mental anguish of a nature no reasonable person could be expected to endure.

7

*Morrow v. Reminger & Reminger Co. LPA*, 183 Ohio App. 3d 40, 61 (2009) (citing *Ashcroft v. Mt. Sinai Med. Ctr.*, 68 Ohio App. 3d 359, 366 (1990)).

In order to establish a claim for negligent infliction of emotional distress, an Ohio plaintiff must show that he (1) was a bystander to an accident; (2) reasonably appreciated the peril thereof; and (3) suffered serious and foreseeable emotional distress as a result of his cognizance or fear of the peril. *Dodge v. United States*, 162 F. Supp. 2d 873, 879 (S.D. Ohio 2001) (citing *Tschantz v. Ferguson*, 97 Ohio App. 3d 693, 714 (1994)). A plaintiff must be aware of a real danger to himself or another and "either witness[] or experience[] a dangerous accident or appreciate[] actual physical peril." *Dicks v. Capital Cities/ABC, Inc.*, 933 F. Supp. 694, 697 (S.D. Ohio 1996) (citing *Heiner v. Moretuzzo*, 73 Ohio St. 3d 80, 87 (1995)). Therefore, a negligent-infliction-of-emotional-distress plaintiff cannot recover "where the [emotional] distress [complained of] is caused by the plaintiff's fear of a nonexistent physical peril." *Id.*

Both emotional distress claims require the plaintiff suffer emotional distress that is serious. *See Paugh v. Hanks*, 6 Ohio St. 3d 72, 78 (1983); *Watkins v. Millennium Sch.*, 290 F. Supp. 2d 890, 903 (S.D. Ohio 2003) (citing *Yeager v. Local Union 20*, 6 Ohio St. 3d 369 (1983)). The seriousness of the emotional distress goes "beyond trifling mental disturbance, mere upset or hurt feelings." *Paugh*, 6 Ohio St. 3d at 78. The emotional injury must be "both severe and debilitating," such that a reasonable person "would be unable to cope adequately with the mental distress engendered by the circumstances of the occurrence." *Id.*; *see also Watkins*, 290 F. Supp. 2d at 903 (citing *Miller v. Currie*, 50 F.3d 373, 378 (6th Cir. 1995)).

In order to defeat a summary judgment motion for a claim of emotional distress, a plaintiff must submit sufficient evidence to create an issue of fact regarding the severity of his or her injury.

8

*Watkins*, 290 F. Supp. 2d at 903 (finding that the plaintiff raised a genuine issue of material fact as to his emotional distress when he submitted an affidavit from his wife detailing the various symptoms of his distress). It is appropriate for a district court to determine on a summary judgment motion whether a plaintiff's alleged emotional distress is sufficiently serious as a matter of law. *Miller*, 50 F.3d at 377–78; *Miller v. City of Columbus*, 920 F. Supp. 807, 824 (S.D. Ohio 1996).

This Court finds Plaintiff's allegations of emotional distress fail because he did not submit evidence of his mental suffering that goes beyond mere upset or hurt feelings. *See Paugh*, 6 Ohio St. 3d at 78. Plaintiff testified to being scared and intimidated during his conversation with the agents such that he was unable to extricate himself from the conversation. At the same time, he was willing to continue the encounter in order to take a photograph of his son. Nonetheless, Plaintiff claims he was "sufficiently traumatized" to decide to file this action (Doc. 24 at 23).

In short, there is no record evidence supporting an assertion that Plaintiff's alleged emotional distress was serious and debilitating. Plaintiff submitted no affidavits detailing symptoms of his distress, no evidence that he sought medical or psychiatric help post-incident, or that he was unable to function normally. *See City of Columbus*, 920 F. Supp. at 824 ("Ohio courts have held that an emotional injury is not severe and debilitating where the plaintiff fails to show that he sought medical or psychiatric help or was unable to work or otherwise function in his daily life.") (internal citations omitted).

A court may also find as a matter of law that a defendant's conduct was not so severe and outrageous as to be sufficient for the claim of intentional infliction of emotional distress. *Miller*, 50 F.3d at 377. This Court finds that the Border Patrol agents' conduct was not "extreme and outrageous" as to go "beyond all possible bounds of decency and . . . be considered completely

9

intolerable in a civilized community." *See Morrow*, 183 Ohio App. 3d at 61. The agents stopped Plaintiff on a public residential street and asked questions without leaving their car while one of them had his hand on his weapon. They never threatened Plaintiff or told him he was not allowed to leave the scene, nor did they accuse him of a crime or ask about his immigration status. The agents' conduct of addressing questions to an individual on the streets was not extreme and outrageous.

As for the agents' conduct with respect to the claim of negligent infliction of emotional distress, Plaintiff fails to point to evidence that he was a bystander and appreciated actual physical peril.

### Claim Five: Deprivation of Civil Rights through Ethnic Intimidation

Ohio Revised Code identifies five types of conduct that can serve as a basis for a civil remedy when committed "by reason of the race, color, religion, or national origin of another person or group of persons." R.C. § 2927.12. The five types of conduct are: (1) aggravated menacing; (2) menacing; (3) criminal damaging or endangering; (4) criminal mischief; and (5) telecommunications harassment. *Id.* Plaintiff argues that the acts of Agents Corona and Richardson constituted menacing or aggravated menacing (Doc. 24 at 21).

Menacing is defined as "knowingly caus[ing] another person to believe that the offender will cause physical harm to the person or property of the other person, the person's unborn, or a member of the other person's immediate family." R.C. § 2903.22. The definition of aggravated menacing is similar but results in a belief that the offender will cause "serious physical harm." R.C. § 2903.21(A). Although the offender does not need to verbalize the threat in order to engage in menacing, the victim must "genuinely believe[] that he or she is facing physical harm to person or property." *Cleveland Metroparks v. Lawrence*, 2012-Ohio-5729, at ¶ 6 (Ohio Ct. App. 2012) (citing *State v. Sperk*,

10

2009-Ohio-1615, at ¶ 33 (Ohio Ct. App. 2009)). The offender must act to "knowingly cause[] the victim to believe that the threat will be executed." *City of Niles v. Holloway*, 1997 WL 665974 (Ohio Ct. App. 1997) (citing Committee Comments to R.C. §§ 2903.21 and 2903.22).

Plaintiff argues the agents' conduct caused him to believe they would cause physical harm to him or his son (Doc. 24 at 22). Specifically, Plaintiff contends the agents' actions of approaching him on a street, using an intimidating tone, keeping a hand on the weapon, and "unrelenting" questioning, carried with them an implied threat of physical harm (*id.*). However, his testimony reveals no express or implied threats of physical harm to him, his son, or his property. Plaintiff testified that the agents stayed in their car, did not accuse him of a crime, and did not want to see his immigration documents. He did not testify that he interpreted the questioning as a threat of physical harm; rather, he said he felt "held back," uncomfortable, and unable to leave the conversation because he feared a reaction from the agents.

Nothing in the record supports allegations that the agents knowingly caused Plaintiff to believe they would harm him physically or that Plaintiff believed he was facing such harm. From Plaintiff's own testimony, it appears that Plaintiff was not in fear of any physical harm because he felt it was reasonable to ask the agents for a photograph. Plaintiff fails to identify record evidence supporting an allegation of a reasonable fear of harm and, without such evidence, his claim for ethnic intimidation through menacing or aggravated menacing fails as a matter of law.

### DEFENDANT'S NOTICE OF OBJECTIONS (DOC. 25)

Defendant takes issue with certain evidence submitted by Plaintiff in support of his opposition briefing and asks this Court to disregard such evidence. Defendant objects to Plaintiff's use of a 1956 Border Patrol directive (Doc. 24-4), an expert report concerning police practices (Doc. 24-5), an

expert report studying apprehension ratios of Hispanics at the Sandusky Bay Border Patrol Station (Doc. 24-6), the *Muniz* deposition of Corey Bammer, the Border Patrol agent in charge, and the *Muniz* deposition of David York, another Border Patrol agent (Doc. 24-7).

This Court has reviewed the evidence submitted in these documents, and such evidence does not impact this Court's finding that Plaintiff has failed to supply sufficient evidence to maintain his claims. In light of the foregoing, Defendant's Objections (Doc. 25) are denied as moot.

## CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment (Doc. 18) is granted on all claims. Defendant's Objections (Doc. 25) are denied as moot.

IT IS SO ORDERED.

    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

April 10, 2013